UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| ASENCION FLORES ANTONIO,           ) | |
| ) | |
| Petitioner,           ) | |
| ) | |
| v.           ) | Case No. 4:25-cv-00240-TWP-KMB |
| ) | |
| SAMUEL OLSON,           ) | |
| TODD LYONS,           ) | |
| KRISTI NOEM,           ) | |
| PAM BONDI,           ) | |
| SCOTT MAPLES,           ) | |
| ) | |
| Respondents.           ) | |

## ORDER GRANTING PETITION FOR HABEAS CORPUS

This matter is before the Court on Antonio Flores Antonio's ("Antonio") Verified Petition for Writ of Habeas Corpus and Complaint for Declarative and Injunctive Relief. (Dkt. 1). Antonio is detained at the Clark County Jail in Jeffersonville, Indiana, under the authority of U.S. Immigration and Customs Enforcement ("ICE"). In his writ of habeas corpus petition under 28 U.S.C. § 2241, he seeks immediate release or, in the alternative, a bond hearing pursuant to 8 U.S.C. § 1226(a) within seven days. (Dkt. 11). Antonio argues that ICE is unlawfully detaining him under a statute making him ineligible for bond. Respondents Samuel Olson, Todd Lyons, Kristi Noem and Pam Bondi ("Respondents") argue that Antonio's detention is lawful and that the only available remedy, if any, is a bond hearing.

The Court finds that Antonio is statutorily eligible for bond and that his continued detention without an opportunity for a bond hearing violates "the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Therefore, the Court grants the petition to the extent that, within **seven days** of this order, **Respondents are ordered** to either: (1) afford Antonio an

individualized bond hearing before an Immigration Judge ("IJ") pursuant to 8 U.S.C. § 1226(a); or (2) release Antonio from custody, under reasonable conditions of supervision.

## I. BACKGROUND

Antonio entered the United States without inspection around the year 2005. (Dkt. 11 ¶ 17). He has resided in the United States continuously with his family, including his three U.S.-citizen children, since then. *Id*. On October 27, 2025, Indiana State Police arrested Antonio for a traffic violation and transferred him to ICE custody the following day. (Dkt. 9-2 at 2) (I-213 Record of Deportable/Inadmissible Alien). After interviewing Antonio, ICE agents issued a Form I-200 Warrant for Arrest of Alien, which commanded "any immigration officer authorized pursuant to sections 236 [8 U.S.C. § 1226] and 287 [8 U.S.C. § 1357] of the Immigration and Nationality Act" to arrest him. *Id.* at 6. (Warrant). ICE also issued a Notice to Appear, initiating removal proceedings and charging Antonio with inadmissibility as an "alien present in the United States without being admitted or paroled" and as an immigrant without valid documents. *Id*. at 5. He has been detained without a bond hearing ever since.

## II. DISCUSSION

Antonio claims that his current detention violates 8 U.S.C. § 1226(a) and that he is entitled to release on bond as a member of the nation-wide class in *Maldonado Bautista v. Santa Cruz*, ---- F. Supp. 3d ---- 2025 WL 3288403, at *9 (C.D. Cal Nov. 25, 2025) (Count I); and that his detention without a bond hearing violates the Due Process Clause of the Fifth Amendment (Count II). (Dkt. 11 ¶¶ 32–41). Respondents argue that Antonio's claim is premature, that he is lawfully detained pursuant to 8 U.S.C. § 1225(b)(2), he is lawfully detained pursuant to 8 U.S.C. § 1226, his detention is constitutionally reasonable, and the *Maldonado Bautista* class action does not afford relief. (Dkt. 9). As will be explained below, the Court finds that Antonio's detention is

governed by § 1226(a) and that it is unlawful because he has not been afforded a bond hearing. Because Antonio is entitled to habeas corpus relief on these grounds, the Court does address the constitutional or class action arguments.

### A. Exhaustion

Antonio has not yet moved for a bond hearing. Respondents argue that, as a result, the instant petition is premature because Antonio has not exhausted all available administrative remedies. (Dkt. 9 at 3). Antonio argues that any attempt to exhaust his administrative remedies would be futile because an IJ would deny his request for a bond hearing under the recent Bureau of Immigration Appeals ("BIA") decisions *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025), and *Matter of Q. Li*, 29 I&N Dec. 66 (BIA 2025). *See* Dkt. 15 at 3–6. Both *Yajure Hurtado* and *Q. Li* held that IJs do not have the authority to hold a bond hearing where the moving noncitizen entered the country without inspection.[1] Because Antonio entered the country without inspection, if he were to move for a bond hearing, an IJ would have to decline jurisdiction over the issue. Also, in July ICE began its new agency-wide policy of subjecting everyone who entered the country without inspection to mandatory detention under § 1225(b)(2). *See* Dkt. 15 at 5. Thus, the new BIA decision and ICE policy make it futile for Antonio to move for a bond hearing before seeking habeas relief.

Respondents do not cite a statute requiring Antonio to move for a bond hearing before seeking habeas relief. In the absence of a statutory mandate, the Seventh Circuit holds that "sound judicial discretion governs" whether courts should require exhaustion. *Gonzalez v. O'Connell*, 355 F.3d 1010, 1016 (7th Cir. 2004). Requiring him to exhaust his administrative remedies here would

---

[1] As will be explained below, *Matter of Hurtado's* rationale is that noncitizens who entered without inspection are subject to the mandatory detention provision in § 1225, not the discretionary detention provision in § 1226(a).

3

be futile. As another trial court in the Seventh Circuit has noted, "[Respondents'] argument is Kafkaesque. Requiring Antonio to exhaust his administrative remedies would be futile because Respondents' position is that he is *statutorily precluded* from obtaining the relief he seeks. The Court declines to require exhaustion because [t]here is nothing to indicate the BIA would change its position [once] the BIA has predetermined the statutory issue." *Valencia v. Noem*, No. 25-CV-12829, 2025 WL 3042520, at *2 (N.D. Ill. Oct. 31, 2025) (internal quotes and citations omitted). As the government has done in other cases, Respondents here repeat the argument that Antonio must exhaust his administrative remedies, but they do not deny that IJs and the BIA are bound to find Antonio ineligible for bond pursuant to *Yajure Hurtado* and *Q. Li*. The Court finds that exhaustion of Antonio's administrative remedies, such as they are, would be futile and, therefore, not required.

### B. Eligibility for Bond under 8 U.S.C. §§ 1226 and 1225

The merits of the petition revolve around Respondents' statutory authority to detain Antonio while his removal proceedings remain pending. Antonio argues that the statutory text and context make it so that Respondents can only lawfully detain him pursuant to 8 U.S.C. § 1226(a). Dkt. 11 at 5–9. Respondents argue that Antonio is subject to the broader "catchall provision" in § 1225(b)(2) because he is an "applicant for admission." (Dkt. 9 at 5).

8 U.S.C. § 1226 and § 1225 govern the detention and removal of noncitizens. In general, § 1226 applies to aliens already present in the United States, while § 1225 applies to "certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2)." *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018). Section 1226(a) provides:

> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States .... [T]he Attorney General—

4

>  (1) may continue to detain the arrested alien; and
>  (2) may release the alien on—
>  (A) bond . . . ; or
>  (B) conditional parole . . ..

8 U.S.C. § 1226(a). "Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings*, 583 U.S. at 306 (citing 8 C.F.R. § 236.1(d)(1)); *see also* 8 C.F.R. § 1236.1(c)(8), (d)(1). At that hearing, the noncitizen "may secure his release if he can convince the officer or immigration judge that he poses no flight risk and no danger to the community." *Nielsen v. Preap*, 586 U.S. 392, 397–98 (2019) (citing 8 C.F.R. §§ 1003.19(a), 1236.1(d)); *see also Hernandez v. Sessions*, 872 F.3d 976, 982 (9th Cir. 2017) ("[T]he burden is on the non-citizen to 'establish to the satisfaction of the Immigration Judge . . . that he or she does not present a danger to persons or property, is not a threat to the national security, and does not pose a risk of flight.'") (citing *In re Guerra*, 24 I. & N. Dec. 37, 38 (BIA 2006)).

Section 1225(b)(1) deals with "inspection of aliens arriving in the United States and certain other aliens who have not been admitted or paroled" and provides that immigration officers *shall* order certain noncitizens removed without further hearing or review unless the noncitizen indicates an intention to apply for asylum. § 1225(b)(1)(A)(i). This applies to noncitizens who have engaged in misrepresentation or have failed to meet document requirements under §§ 1182(a)(6)(C) or 1182(a)(7). *Id.*

Section 1225(b)(2) pertains to "[i]nspection of other aliens." In relevant part, it provides that "in the case of an alien who is an *applicant for admission*, if the examining immigration officer determines that an alien *seeking admission* is not clearly and beyond a doubt entitled to be admitted, the alien *shall be* detained for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A) (emphasis added). An "applicant for admission" is "[a]n alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated

5

port of arrival . . .)." 8 U.S.C. § 1225(a)(1). In other words, noncitizens subject to 1225(b)(2) are not eligible for expedited removal but are subject to mandatory detention while their removal proceedings are pending.

### i. Antonio Is Eligible for a Bond Hearing Pursuant to 8 U.S.C. § 1226(a)

The record shows that DHS is detaining Antonio under § 1226. Antonio was arrested pursuant to a warrant that explicitly invokes § 1226, which authorizes the arrest and detention of aliens with a warrant. Section 1225 does not reference warrants. *See Campos Leon v. Forestal*, No. 1:25-CV-01774-SEB-MJD, 2025 WL 2694763, at *3 (S.D. Ind. Sept. 22, 2025) ("It is difficult to find that § 1226(a) carries any meaning if the aliens it expressly addresses—those arrested and detained pursuant to warrants—are not actually subject to its provisions."). "[T]he Government has affirmatively decided to treat" Antonio "as being detained under Section 1226(a) and it cannot now be heard to change its position to claim that he is detained under Section 1225(b)." *Patel v. Crowley*, No. 25 C 11180, 2025 WL 2996787, at *6 (N.D. Ill. Oct. 24, 2025) (citing *Kennedy v. Kijakazi*, No. 22-2258, 2023 WL 1990303, at *3 (7th Cir. Feb. 14, 2023)).

The few district court opinions that have found that noncitizens arrested in the interior were properly detained pursuant to § 1225 emphasize that in those instances, DHS did not issue a warrant for the alien's arrest and detention. *See, e.g., Sandoval v. Acuna*, 2025 WL 3048926, at *5 (W.D. La. Oct. 31, 2025) ("Petitioner does not allege that the Attorney General issued a warrant for her arrest and detention, further indicating that Antonio is properly detained under § 1225(b) as an 'applicant for admission,' not § 1226(a)"); *Vargas Lopez v. Trump*, 2025 WL 2780351, at *7 (D. Neb. Sept. 30, 2025) ("This failure of proof of a warrant for Vargas Lopez's arrest is fatal to the Second Cause of action. Vargas Lopez has not provided this Court with the documents necessary for Vargas Lopez to be eligible for release on bond under § 1226."). In contrast, *Cirrus*

*Rojas v. Olson, et al.*, No. 25-cv-1437-bhl, dkt. 20, (E.D. Wis. Oct. 31, 2025) found that a petitioner's detention fell under § 1225 despite having been issued a warrant citing § 1226 and granted bond in a previous hearing. *See also Mejia Olalde v. Noem*, 2025 WL 3131942, at *2 (E.D. Mo. Nov. 10, 2025) (finding that the plain language of § 1225(b)(2) supports the conclusion that petitioner, who had been living in the United States for 40 years, was subject to mandatory detention as an "applicant for admission."). Neither *Cirrus Rojas* nor *Mejia Olalde* compel the Court to conclude that § 1225 applies here. The cases are not identical factually and as explained below, the Court finds here that the nature and circumstances of Antonio's arrest and proceedings support application of § 1226 rather than § 1225.

The text and context of the statute also support Antonio's position that ICE's authority to detain him derives from § 1226(a) and not from § 1225(b)(2)(A). *See Cazarez-Gonzales v. Olson*, No. 2:25-CV-590 (S.D. Ind. Dec. 5 2025) (collecting cases); *see also Castañon-Nava v. U.S. Dep't of Homeland Sec.*, No. 25-3050, 2025 WL 3552514, at *8-*10 (7th Cir. Dec. 11, 2025) (stating that "Plaintiffs have the better argument on the current record" referring to argument that "ICE's authority to detain a noncitizen discovered within the country derives from § 1226(a) and not from § 1225(b)."). Respondents argue that § 1225(b)(2) pertains to Antonio because he is an "applicant for admission" who is "not clearly and beyond a doubt entitled to be admitted." Dkt. 9 at 6. Respondents do not appear to argue that Antonio is seeking admission, nor could they. "'[S]eeking' means 'asking for' or 'trying to acquire or gain' and implies some kind of affirmative action on the part of the applicant." *Alejandro v. Olson*, 2025 WL 2896348, at *7 (S.D. Ind. Oct. 11, 2025); *see also Beltran Barrera v. Tindall*, No. 3:25-cv-541-RGJ, 2025 WL 2690565, at *4 (W.D. Ky. Sept. 19, 2025) (rejecting the respondents' interpretation of section 1225(b)(2) to cover all noncitizens who are present without being admitted because "[t]he term 'seeking' 'implies action'" and "those

who have been present in the country for years are not actively 'seeking admission.'"). Antonio is not "seeking admission." He entered the United States in 2005 and has lived here ever since. Noncitizens such as Antonio are "seeking to remain in the United States" not seeking to be admitted. *Alejandro*, 2025 WL 2896348, at *7 ("[Petitioner] is not actively 'seeking' 'lawful entry' because he entered the United States over 20 years ago."); *Lopez Benitez v. Francis*, 2025 WL 2371588, at *7 (S.D.N.Y. Aug. 13, 2025) (explaining that "seeking admission" means that a noncitizen must be actively "seeking" "lawful entry").

Respondents' attempt to turn "seeking admission" into a redundancy for "applicant for admission" is unconvincing. *See* dkt. 9 at 6–11. As the Seventh Circuit recently explained regarding the same argument, "it is Congress's prerogative to define a term however it wishes, and it has chosen to limit the definition of an 'applicant for admission' to 'an alien present in the United States who has not been admitted or who arrives in the United States.'" *Castañon-Nava*, 2025 WL 3552514, at *9 (quoting 8 U.S.C. § 1225(a)(1)). "[Congress] could easily have included noncitizens who are 'seeking admission' within the definition [of applicant for admission] but elected not to do so." *Id.* As such, Respondents' construction of "seeking admission" § 1225(b)(2)(A) as merely repeating "applicant for admission" would render the phrase superfluous, "violating one of the cardinal rules of statutory construction." *Id.* (citing *United States ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 432 (2023)). "[A]s the Supreme Court reminds us, if an interpretation of one provision 'would render another provision superfluous, courts presume that interpretation is incorrect.'" *Id.* (quoting *Bilski v. Kappos*, 561 U.S. 593, 607–08 (2010)). Thus, the fact that Antonio fits only two out of three criteria does not suffice to show that § 1225(b)(2) applies to him. That he plainly does not fit into the third criterion "seeking admission," adds even more support to the conclusion that § 1225(b)(2) does not apply to Antonio.

8

*See Castañon-Nava*, 2025 WL 3552514, at *9 ("And while a noncitizen arrested in the Midwest might qualify as 'an alien present in the United States who had not been admitted,' § 1225(a)(1), the mandatory detention provision upon which Defendants rely, limits its scope to an 'applicant for admission' who is 'seeking admission,' § 1225(b)(2)(A).").

Furthermore, "the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Davis v. Michigan Dep't of Treasury*, 489 U.S. 803, 809 (1989); *see also King v. Burwell*, 576 U.S. 473, 486 (2015) (Our duty, after all, is "to construe statutes, not isolated provisions.") (internal quotation omitted). Considering § 1225 as a whole, the most natural meaning is that it applies to "arriving" noncitizens attempting to enter the United States. Section 1225 is titled: "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing" and it repeatedly refers to "arriving" aliens throughout. *See* 8 U.S.C. § 1225(b)(1)(A)(i) (screenings for aliens "arriving in the United States"); *id.* § 1225(b)(2)(C) (aliens "arriving on land . . . from a foreign territory contiguous to the United States" may be returned to that territory pending removal proceedings); *id.* § 1225(d)(1) (immigration officers authorized to inspect "any vessel, aircraft, railway car, or other conveyance or vehicle in which they believe aliens are being brought into the United States"). The statute further explicitly addresses "crewm[e]n" and "stowaway[s]" in § 1225(b)(2), reflecting that Congress envisions § 1225 to apply broadly to "arriving" noncitizens—not just § 1225(b)(1). In addition, its sister statute, 8 U.S.C. § 1225a, focuses on the pre-inspection of aliens entering the country at foreign airports. As Respondents concede, Antonio "is not 'arriving' in the United States." Dkt. 9 at 6.

Respondents' interpretation also disregards the relationship between § 1225 and § 1226 within the INA. While § 1225 focuses on "inspection" of "arriving aliens," § 1226 pertains to the

9

"[a]pprehension and detention of aliens." The plain language here suggests that § 1226—not § 1225—applies to Antonio because he is an alien, who was "apprehended" and "detained" after a warrant was issued for his arrest. The fact that these two classes of noncitizens would be treated differently makes sense within broader immigration law. As the Seventh Circuit explained, "the difference in treatment between a noncitizen at the border and one already in the United States fits within the broader context of our immigration law. Indeed, '[t]he distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law.'" *Castañon-Nava*, 2025 WL 3552514, at *10 (quoting *Zadvydas*, 533 U.S. at 693); *see also Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958) ("[O]ur immigration laws have long made a distinction between those aliens who have come to our shores seeking admission ... and those who are within the United States after an entry, irrespective of its legality.").

Last, Respondents' interpretation of § 1225(b)(2) would make the recently enacted amendment to § 1226(c) superfluous. Congress passed the Laken Riley Act in 2025 to amend section 1226(c) and include more classes of aliens who are ineligible for bond under § 1226(a). Laken Riley Act, Pub. L. No. 119-1, sec. 236, § 2, 139 Stat. 3, 3 (2025). One of those new classes of non-bondable aliens are aliens not admitted into the United States who were charged with specific crimes. 8 U.S.C. § 1226(c)(1)(E) (citing *id.* § 1182(a)(6)(A)). Under the Respondents' expansive interpretation of § 1225, the amendment would have no purpose. Section 1225(b)(2) would already provide for mandatory detention of every unadmitted alien, regardless of whether the alien falls within one of the new classes of non-bondable aliens established by the Laken Riley Act. As seen above, courts construe statutes "so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." *Corley v. United States*, 556 U.S. 303, 314 (2009). Adopting Respondents' reading would render § 1226(c) completely unnecessary.

In sum, the record shows that Respondents arrested Antonio pursuant to § 1226(a) and the text and context of § 1225 and § 1226 show that Antonio may only be lawfully detained pursuant to § 1226(a).

### ii. Section 1226(e) Does Not Bar This Court's Jurisdiction Over the Petition

In the alternative, Respondents argue that Antonio is lawfully detained under § 1226(a) "because he has the opportunity to receive a hearing before an Immigration Judge." (Dkt. 9 at 12). Thus, this Court cannot review the IJ's decision due to § 1226(e), which states:

> The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole.

*Id.* (quoting 8 U.S.C. § 1226(e)).

There is no evidence that Antonio has or had an opportunity to receive a bond hearing where the IJ would make an individualized determination of his custody pursuant to 8 C.F.R. § 236.1(d)(1). Furthermore, Respondents do not cite any binding precedent applying § 1226(e) to a habeas petition seeking a bond hearing pursuant to § 1226(a). In fact, Respondents' case, *Demore v. Kim*, 583 U.S. 510 (2003), held that § 1226(e) did *not* deprive courts of habeas jurisdiction over a challenge to detention under § 1226(c) because the Petitioner did not challenge a discretionary judgment or a decision, but the statutory framework permitting his detention without bail. 530 U.S. at 516–17. Similarly, Antonio is not challenging a discretionary judgment—he is challenging his ongoing detention without being given the opportunity to seek a discretionary judgment regarding his custody. In sum, § 1226(e) does not preclude jurisdiction over the instant petition because it does not challenge a discretionary judgment denying or revoking bond.

### III.  CONCLUSION

Antonio is entitled to habeas relief because his continued detention without a bond hearing violates ". . . the laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The remaining question is the remedy, which should be "appropriate to the violation." *Waller v. Georgia*, 467 U.S. 39, 50 (1984). Immediate release is the customary remedy in habeas proceedings. *See Thursaissigiam*, 591 U.S. at 107 ("Habeas has traditionally been a means to secure release from unlawful detention."); *Munaf v. Geren*, 553 U.S. 674, 698 (2008) (explaining that "the quintessential habeas remedy" is release from custody). However, ordering an individualized bond hearing is appropriate here because detention under § 1226(a) is discretionary and the violation of the statute arises from Antonio's detention without a bond hearing.

The Verified Petition for Writ of Habeas Corpus, Dkt. [1] is **GRANTED** to the extent that, within **seven days** of this order, Respondents must either: (1) provide Antonio with an individualized bond hearing before an IJ pursuant to 8 U.S.C. § 1226(a); or (2) release Antonio from custody, under reasonable conditions of supervision. Respondents must document that they have provided Antonio with a bond hearing pursuant to 8 U.S.C. § 1226(a) or that they have released him. Respondents **must file notice with the court within four days** of either action.

The **clerk is directed** to enter final judgment..

**IT IS SO ORDERED.**

Date: 12/18/2025

_____
Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

Distribution:

Rania Attum
rania@attumlaw.com

R. Jeffrey Lowe
KIGHTLINGER & GRAY, LLP (New Albany)
jlowe@k-glaw.com

Shelese M. Woods
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
shelese.woods@usdoj.gov